## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TERRI NORRIS**<br>**1364 Independence Ave SE**<br>**Washington, D.C. 20003**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Washington Metropolitan Area**<br>**Transit Authority**<br>**600 5ᵗʰ Street NW, 7ᵗʰ Floor**<br>**Washington, D.C. 20001**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **Civil Action No. 18-1540**<br><br>**COMPLAINT & JURY DEMAND** |

COMES NOW Plaintiff, Terri Norris, by and through her undersigned counsel, and complains as follows:

### INTRODUCTION

1.      This is an action authorized and instituted pursuant to the Americans with Disabilities Act of 1990 ("ADA/ADAAA") and Section 501 of the Rehabilitation Act of 1973 for the Washington Metropolitan Area Transit Authority's ("WMATA" or "Defendant") unlawful harassment, discrimination, and retaliation against the Plaintiff.

### JURISDICTION AND VENUE

2.      This Court maintains federal question jurisdiction pursuant to 28 U.S.C. § 1331, the ADA, and Rehabilitation Act; and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant employed

1

Plaintiff in Washington, D.C. and a substantial part of the events or omissions giving rise to

Plaintiff's claims occurred in the District of Columbia.

## EXHAUSTION OF REMEDIES

4.      Plaintiff has exhausted all of her administrative remedies.

5.      On or about June 2, 2016, Plaintiff filed a complaint with the Washington Field

Office of the U.S. Equal Employment Opportunity Commission (EEOC).

6.      A Right-to-Sue letter was issued to Plaintiff from the EEOC, dated March 22,

2018, and received on March 29, 2018.[1]

7.      Accordingly, Plaintiff timely files this action in accordance with the Right-

to-Sue letter, which provided Plaintiff the right to file this Complaint within 90 days of

receipt of the letter.

## PARTIES

8.      Plaintiff, Terri Norris ("Plaintiff"), resides at 1364 Independence Avenue SE,

Washington, D.C. 20003.

9.      Plaintiff is employed by WMATA as a Rail Operations Supervisor.  However,

at the time relevant to the claims in this matter, plaintiff was employed as a Manager of

Bus Service (SOM).

10.     Plaintiff had been a stalwart employee of the Defendant since June 25, 1990.

11.     During the relevant period, Plaintiff was on administrative leave and/or

limited duty ("LTD"). However, prior to her placement in an inactive status, when Plaintiff

was a SOM, she worked from the Four Mile Run Division in Arlington, VA.

---

[1] Although the Right-to-Sue letter is dated March 22, 2018, the notice was mailed to Plaintiff's attorney of record at the time, who received it on March 29, 2018 and who in turn sent it via email to Plaintiff that day, indicating to her that her 90-day deadline to file was June 27, 2018.

12.      During the relevant period, Plaintiff was Defendant's employee within the meaning, and entitled to the protections, of the ADAAA and Rehabilitation Act.

13.      Defendant is an interstate compact agency and instrumentality of the District of Columbia and the states of Maryland and Virginia as authorized by Congress through Pub. L. No. 89-774. Upon information and belief Defendant receives federal funds and is subject to the provisions of the Rehabilitation Act.

14.      WMATA is a corporation that conducts business in the District of Columbia with its principal office at 600 5th Street, N.W., Washington, D.C. 20001.

## FACTUAL ALLEGATIONS

15.      On June 25, 1990, Plaintiff, Terri Norris, began to work for WMATA.

16.      On or about 2001, Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD).

17.      In February 2014, Plaintiff, was diagnosed with anxiety, adjustment disorder, and acute stress which later rose to Post Traumatic Stress Disorder (PTSD).

18.      On or about December 2014, Plaintiff informed WMATA about her diagnoses.

19.      Plaintiff's diagnosed medical conditions substantially limit her major life activities, including concentrating, thinking, learning, caring for oneself, and working.

20.      On or about January 30, 2014, Plaintiff was demoted, seven weeks after receiving a promotion, despite having all positive performance appraisals, great attendance, and no misconduct or disciplinary issues in her personnel file.

21.      On or about January 30, 2015, Plaintiff went on administrative leave as a result of the discriminatory and hostile work environment created by the Defendant.

22.     On or about April 20, 2015, Plaintiff returned to work in her demoted position, as a Manager of Bus Service. In this position, Plaintiff began to experience sexual harassment from her then supervisor and was subjected to continued discrimination and harassment from Defendant.

23.     On August 14, 2014, because of her hostile and discriminatory work environment, Plaintiff went out on administrative leave, again.

24.     On or about February 4, 2015, Plaintiff filed for Long Term Disability (LTD).

25.     On or about March 24, 2015 Plaintiff was approved for LTD and began receiving disability payments at 60% of her salary.

26.     On or about December 2014, WMATA was again put on notice of Plaintiff's disabilities by the Plaintiff and her psychologist.

27.     On or about June 9, 2014, Plaintiff had a mental evaluation conducted by her psychologist, which determined that she was suffering from PTSD.

28.     On or about December 29, 2014, based on her physician's recommendation, Plaintiff requested a reasonable accommodation for a job reassignment.

29.     On or about January 29, 2015, WMATA, through its ADA panel, offered Plaintiff accommodations that would assist her in returning to her 2014 SOM position, where she was sexually harassed.

30.     The proposed accommodations included bi-weekly meetings, training (although she had 17 years of experience at the time), and a new direct supervisor.

31.     Plaintiff conferred with her psychologist and it was determined that working for the department for Bus Transportation (BTRA)/Bus of Central Control (BOCC) would exacerbate her impairments.

32.      As a result, and on the advice of her psychologist, Plaintiff refused the offered

accommodation on the grounds that it would not accommodate her disabilities.

33.      On or about June 1, 2015, WMATA's ADA Panel ("Panel") determined that

Plaintiff could no longer perform the essential functions of her 2014 position, Manager

of Bus Service (SOM), with or without a reasonable accommodation.

34.      As a result, the Panel explored a job reassignment for Plaintiff.

35.      Specifically, Plaintiff was advised that the Panel would look for vacant,

comparable positions that she qualified for.

36.      Plaintiff was also instructed to look on the Intranet via PeopleSoft for vacant

comparable positions and inform the ADA panel of her findings.  If Plaintiff met the

minimum qualifications for an identified position, Defendant advised that she would

be linked to the position, with no competition.

***Plaintiff was discriminated against based on her disability and in retaliation for her
protected activity when her reasonable accommodation was unreasonably delayed***

37.      From October 2015 to April 2016, approximately six months, WMATA

withheld Plaintiff's access of PeopleSoft, which hindered her from accessing and

identifying the most recent internal job vacancies.

38.      Between October 26, 2014 and August 30, 2017, Plaintiff applied for the

Rail Operations Supervisor, Safety Officer, Fire and Life Safety Coordinator, and

Quality Assurant Inspector positions.

39.      WMATA unnecessarily and unreasonably delayed its response to

Plaintiff's request for a reasonable accommodation for four (4) positions:  Rail

Operations Supervisor, Safety Officer, Fire Life Safety Coordinator and Quality

Assurant Inspector (#150783).

40.     On January 8, 2016, after Plaintiff submitted vacant comparable positions that she met the minimum qualifications for as instructed, WMATA offered Plaintiff a non-comparable position as a Station Manager. The Station Manager position was not-comparable in salary, benefits, duties, or responsibilities, and it was a non-represented position. Plaintiff was only given approximately three (3) business days to accept this position via email, which she declined.

41.     Defendant failed to engage in the interactive process with Plaintiff, did not conduct an individualized assessment, and did not take Plaintiff's medical certification into consideration.

42.      After Plaintiff complained about the Authority's failure to accommodate her and her acceptance of the Rail Operations Supervisor position, WMATA later offered or considered her for a Safety Officer position #170459, Fire Life Safety Coordinator position #170326, Rail Operations Supervisor position, and Department Safety Coordinator position #170468.

43.     On or about February 23, 2016, Plaintiff submitted a complaint to WMATA's EEO office regarding her job reassignment and applications, which included Safety Officer, Fire Life Safety Coordinator, Quality Assurant Inspector #150783, and the Rail Operations Supervisor positions.

44.     At the time, Plaintiff had twenty-five (25) years of Transportation experience in Bus Operations and seventeen (17) years of management experience with concentrations in transportation, safety operation, safety management, complex investigations, and emergency response.

45.     Additionally, Plaintiff worked as, or with, the Emergency Task Team,

Accident Reduction Task Team, Acting Safety Analyst, Drive Cam Manager, Acting

Manager of Bus Operations, and possesses a Bachelor's degree in Management.

46.     Nevertheless, WMATA indicated that Plaintiff did not meet the minimum

qualifications for the positions because she did not possess a Bachelor's degree in

Safety, Safety Management, Engineering, Transportation, Chemistry, and

Environmental Health, and did not have at least six (6) years of progressively

responsible experience in one or more of the related primary areas of the job.

47.     On or about April 5, 2016, Plaintiff provided WMATA's EEO office with

a copy of her resume, and highlighted her accomplishments, again.

48.     In addition, Plaintiff highlighted the job description statement that

indicated experience could be used in lieu of education.  Plaintiff never received a

response.

49.     On or about June 2, 2016, Plaintiff filed a charge of discrimination with

the EEOC (Washington D.C. Field Office) alleging disability discrimination and

retaliation.

**Rail Operations Supervisor Position**

50.     During December 16, 2014 through August 2016, Plaintiff applied for the

Rail Operations Supervisor positions on multiple occasions, which she was qualified

for.

51.     Despite denying Plaintiff the Rail Operations Supervisor position,

WMATA hired Rail Operations Supervisors in 2014 and 2015 without internal or

external Rail experience.

52.     On or about June 2, 2016, Plaintiff filed a charge of discrimination with

the EEOC alleging disability discrimination and retaliation.

53.     On or about May 18, 2016 WMATA informed Plaintiff that she was considered for the Fire Life Safety Coordinator position, which was contrary to WMATA previously advising Plaintiff that she would be placed in a position that she met the minimum qualifications for, without competition. To be considered for the Fire Life Safety Coordinator position, Plaintiff was required to provide information for a background check on the same day by 2:00 pm before moving forward.

54.     Plaintiff had previously and frequently inquired about the Fire Life Safety Coordinator position, to no avail.

55.     On August 5, 2016, WMATA offered Plaintiff a Rail Operations Supervisor Candidate position, which required her to attend training classes for approximately eight (8) months and two (2) months of On the Job Training.  Again, this was contrary to WMATA previously advising Plaintiff that she would be placed in a position that she met the minimum qualifications for, without competition.

56.     To become a Rail Operations Supervisor, Plaintiff had to successfully complete various examinations and obtain certifications. If Plaintiff failed any of the examinations and/or failed to obtain the required certifications, she would have been denied the Rail Operations Supervisor position.

57.     The Rail Operations Supervisor position is the same position that Plaintiff was previously told that she did not meet the requirements for.

58.     Prior to accepting the Rail Operations Supervisor position, Plaintiff inquired about the Fire Life Safety Coordinator position that she was previously told she was being considered for, because the Fire Life Safety Coordinator position was a direct link, which did not require any prior testing or certifications.

59.     On or about August 26, 2016, after two years of waiting to be placed in a

position by WMATA, Plaintiff accepted the Rail Operations Supervisor Candidate position and was formally hired. However, the start date for the Rail Operations Supervisor Candidate position was October 31, 2016, two months away.

60.     After offering Plaintiff the Rail Operations Supervisor Candidate position, WMATA indicated that they hired her for the position because they did not have enough internal Rail candidates, which, based upon reason and belief, was not true.

61.     In 2014, 2015, and the first half of 2016, internal Rail candidates submitted complaints about Human Resources and the Manager of Rail Transportation regarding the Agency's refusal to hire internal rail candidates for the Rail Operations Supervisor positions.

62.     In order to meet the strenuous demand of testing and obtaining certifications for the Rail Operations Supervisor Candidate position, on or about September 26, 2016, Plaintiff requested another accommodation because of her ADHD disability, which included reading and studying material in advance, a schedule of the training class, and the use of a tape recorder.

63.     On or about September 28, 2016, WMATA informed Plaintiff that the ADA panel would follow up in writing with a determination regarding her request. The Plaintiff never received the additional accommodation requests.

64.     After Plaintiff successfully completed her course, Rail Transportation and HR hired approximately four or five additional classes of Rail Supervisors, with all internal Rail candidates, which is contrary to the shortage Defendant asserted existed.

**Safety Officer Position**

65.     From September 23, 2014 through August 30, 2017, Plaintiff applied for

the Safety Officer positions on multiple occasions, which she was qualified for.

66.     From September 23, 2014 to August 30, 2017, WMATA's Human Resources Department advertised multiple Safety Officer positions within various sub-divisions.

67.     Plaintiff submitted applications for at least ten (10) Safety Officer positions.

68.     With each Safety Officer application, WMATA indicated that Plaintiff did not meet the minimum requirements.

69.     Specifically, WMATA stated that Plaintiff lacked the "recommended" degree requirement in Safety, Safety Management, Engineering, Transportation, Chemistry, or Environmental Health and that she did not have six (6) years of experience.

70.     However, the job vacancy announcement and job description states, in part, "experience in lieu of education will be considered if candidate can effectively demonstrate progressively responsible experience in one or more of the related primary areas to include experience conducting the more complex investigations and developing requirements for special emphasis programs."

71.     Throughout Plaintiff's twenty-five (25) years of experience at WMATA, she obtained experience in one or more of the related primary areas, which includes transportation (Bus operations), with concentrations in safety operations, safety management, complex investigations, and emergency response. Additionally, Plaintiff worked as, or with, the Emergency Task Team, Accident Reduction Task Team, Acting Safety Analyst, Drive Cam Manager, Acting Manager of Bus Operations, and possesses a Bachelor's degree in Management.

72.     At the time Plaintiff applied for the Safety Officer position, WMATA's Intranet had listed that that the Rail Safety Department had approximately three (3) out of the fifteen (15) Safety Officers and Managers with the recommended degree. In the Occupational Safety Department approximately two (2) out of seven (7) Safety Officers and Managers had the recommended degree.  In Bus and Metro Access Safety Department, approximately one (1) out of nine (9) Safety Officers had the recommended degree.  Within these departments neither the Deputy Chief nor Manager have the recommended degree.

73.     Other Managers of Bus Service were also hired as Safety Officers.  These Officers, who, based on reason and belief, did not need a reasonable accommodation, and had not engaged in statutorily protected activity, had less experience than Plaintiff.

74.     At the time, Plaintiff had twenty-five (25) years of Transportation experience in Bus Operations and seventeen (17) years of management experience with concentrations in transportation, safety operation, safety management, complex investigations, and emergency response.

75.     Additionally, Plaintiff worked as, or with, the Emergency Task Team, Accident Reduction Task Team, Acting Safety Analyst, Drive Cam Manager, Acting Manager of Bus Operations, and possesses a Bachelor's degree in Management.

76.     Nevertheless, WMATA indicated that Plaintiff did not meet the minimum qualifications for the positions because she did not possess a Bachelor's Degree in Safety, Safety Management, Engineering, Transportation, Chemistry, and Environmental Health, and did not have at least six (6) years of progressively responsible experience in one or more of the related primary areas of the job.

11

77.     On or about April 5, 2016, Plaintiff provided WMATA's EEO office with a copy of her resume, and highlighted my accomplishments, again.  In addition, Plaintiff highlighted the job description statement that indicated experience could be used in lieu of education.  Plaintiff never received a response.

78.     On or about June 2, 2016, Plaintiff filed a charge of discrimination with the EEOC alleging disability discrimination and retaliation.

79.     On or about August 30, 2017, WMATA considered the Plaintiff's Safety Officer position application (No. 170459), for hire. However, on or about August 26, 2016 Plaintiff accepted the Rail Operations Supervisor Candidate position; started the position on October 31, 2016; and completed the Rail Operations Supervisor Candidate training and OJT on or about August 1, 2017.

**Fire Life Safety Coordinator Position**

80.     Between February 23, 2016 and August 30, 2017, Plaintiff submitted four (4) applications for the Fire Life Safety Coordinator position, which she was qualified for.

81.     WMATA indicated that Plaintiff did not meet the minimum requirements for the position.

82.     On May 18, 2016, Plaintiff was informed that she was being considered for the Fire Life Safety Coordinator position, and that a background check was required.

83.     On or about June 2, 2016, Plaintiff filed a charge of discrimination with the EEOC alleging disability discrimination and retaliation.

84.     Plaintiff was never offered the Fire Life Safety Coordinator position.

**Quality Assurant Inspector Position**

85.     On or about February 22, 2016, Plaintiff submitted one (1) application for the Quality Insurant Inspector position #150783, which she was qualified for.

86.     On or about June 2, 2016, Plaintiff filed a charge of discrimination with the EEOC (DC Regional Office) for disability discrimination and retaliation.

87.     WMATA indicated that Plaintiff did not meet the minimum requirements for the position on or around June 3, 2016.

### Injury to Plaintiff

88.     Because of Defendant's conduct, Ms. Norris has suffered, and will continue to suffer substantial loss and injury, including but not limited to, pain and suffering, physical injury and sickness, economic loss, humiliation, embarrassment, indignity, mental and emotional distress, and the deprivation of her rights to equal employment opportunity.

89.     Through the actions of Defendant's employees, agents, and/or representatives described above, Defendant acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

90.     Because of the experiences Ms. Norris faced in her workplace, she currently sees a psychotherapist/psychiatrist monthly for medicine management and therapy.

### COUNT 1

### (ADA/ADAAA DISCRIMINATION-FAILURE TO ACCOMODATE)

91.     Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 to 90 above, as if fully set forth herein.

92.     Plaintiff qualifies under the ADAAA as a qualified individual with a disability.

93.     Defendant discriminated against Plaintiff because of her disability by engaging in, tolerating or failing to prevent disability discrimination and by failing to

take affirmative action to correct and redress the unlawful employment practices

perpetrated against Plaintiff.

94.     WMATA knew of Plaintiff's disabilities, which limited major life

activities.

95.     Plaintiff was able to perform her essential duties with a reasonable

accommodation for her disability.

96.     Defendant failed to engage in the interactive process.

97.     Additionally, Defendant unnecessarily delayed providing Plaintiff with a

reasonable accommodation.

98.     Defendant failed to provide reasonable accommodation for Plaintiff's

disability.

99.     WMATA must comply with the ADA/ADAAA, but by and through its conduct,

Defendant violated the law.

100.    The reasons proffered by Defendant for its unlawful conduct are pretextual and

Defendant cannot further offer any legitimate reason for its unlawful conduct.

101.    Defendant is directly liable for the discriminatory acts or omissions of its

agents, servants and employees while acting within the course and scope of their

employment, under the theory of *Respondeat Superior*.

102.    Defendant's actions were intentional, reckless, and malicious.

103.    As a direct and proximate cause of Defendant's conduct alleged

throughout this Complaint, Plaintiff suffered and continues to suffer from harm,

injury and monetary damages - including but not limited to past and future loss of

income, benefits, promotion and promotional opportunities, career opportunities,

medical expenses and costs - and is entitled to all available legal and equitable

14

remedies.

104.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

105.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all the other losses stated with Plaintiff not contributing in any way thereto.

## COUNT 2
## (REHABILITATION ACT VIOLATION- FAILURE TO ACCOMMODATE)

106.     Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 to 105 above, as if fully set forth herein.

107.     Plaintiff qualifies under the Rehabilitation as a qualified individual with a disability.

108.     Defendant retaliated and discriminated against Plaintiff because of her disability by engaging in, tolerating or failing to prevent disability discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

109.     WMATA knew of Plaintiff's disabilities, which limited major life activities.

110.     Plaintiff was able to perform her essential job duties with a reasonable accommodation for her disability.

111.     WMATA failed to provide reasonable accommodation for Plaintiff's disability.

112.     WMATA must comply with the Rehabilitation Act, but by and through its

conduct, Defendant violated the law.

113.    Defendant failed to engage in the interactive process.

114.    Additionally, Defendant unnecessarily delayed providing Plaintiff with a reasonable accommodation.

115.    The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

116.    Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior.*

117.    Defendant's actions were intentional, reckless, and malicious.

118.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages - including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

119.    Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

120.    Plaintiff has incurred lost wages, loss benefits, loss of reputation and loss of career opportunity now and into the future, and all the other losses stated with Plaintiff not contributing in any way thereto.

## COUNT 3

## (ADA INTERFERENCE – 42 U.S.C. § 12203(b))

121.     Plaintiff re-alleges and incorporates by reference every allegation in

paragraphs 1 to 120 above, as if fully set forth herein.

122.     Plaintiff qualifies under the ADA as a qualified individual with a

disability.

123.     Plaintiff was engaged in activity statutorily protected by the ADA.

124.      Plaintiff was engaged in the exercise or enjoyment of ADA protected

rights.

125.     Defendant coerced, threatened, intimidated, or interfered on account of

her protected activity.

126.     Defendants were motivated by an intent to discriminate and interfere with

the Plaintiff's exercise of her rights under the ADA.

127.     WMATA must comply with the ADA, but by and through its conduct, Defendant

violated the law.

128.     Defendant failed to engage in the interactive process.

129.     Additionally, Defendant unnecessarily delayed providing Plaintiff with a

reasonable accommodation.

130.     The reasons proffered by Defendant for its unlawful conduct are pretextual and

Defendant cannot further offer any legitimate reason for its unlawful conduct.

131.     Defendant is directly liable for the discriminatory acts or omissions of its

agents, servants and employees while acting within the course and scope of their

employment, under the theory of *Respondeat Superior*.

132.     Defendant's actions were intentional, reckless, and malicious.

17

133.    The foregoing actions by Defendant constitute unlawful interference with Plaintiff's exercise and enjoyment of her rights under the ADA.

134.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages - including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

135.    Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

136.    Plaintiff has incurred lost wages, loss benefits, loss of reputation and loss of career opportunity now and into the future, and all the other losses stated with Plaintiff not contributing in any way thereto.

## COUNT 4

### (REHABILITATION ACT- INTERFERENCE)

137.    Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 to 136 above, as if fully set forth herein.

138.    Plaintiff qualifies under the Rehabilitation Act as a qualified individual with a disability.

139.    Plaintiff was engaged in activity statutorily protected by the Rehabilitation Act.

140.    Plaintiff was engaged in the exercise or enjoyment of the Rehabilitation Act

protected rights.

141.    Defendant coerced, threatened, intimidated, or interfered on account of her protected activity.

142.    Defendants were motivated by an intent to discriminate and interfere with the Plaintiff's exercise of her rights under the Rehabilitation Act.

143.    WMATA must comply with the Rehabilitation Act, but by and through its conduct, Defendant violated the law.

144.    Defendant failed to engage in the interactive process.

145.    Additionally, Defendant unnecessarily delayed providing Plaintiff with a reasonable accommodation.

146.    The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

147.    Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior.*

148.    Defendant's actions were intentional, reckless, and malicious.

149.    The foregoing actions by Defendant constitute unlawful interference with Plaintiff's exercise and enjoyment of her rights under the Rehabilitation Act.

150.    As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages - including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs - and is entitled to all available legal and equitable remedies.

19

151.    Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

152.    Plaintiff has incurred lost wages, loss benefits, loss of reputation and loss of career opportunity now and into the future, and all the other losses stated with Plaintiff not contributing in any way thereto

**COUNT 5**
**(ADA RETALIATION – 42 U.S.C. § 12203(a))**

153.    Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 to 152 above, as if fully set forth herein.

154.    Soon after complaining, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of the ADA, 42 U.S.C. § 12203(a).

155.    Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her participation and opposition to the unlawful and discriminatory employment practices of Defendant in violation of the ADA.

156.    Defendant, including Plaintiff's supervisors, knew of Plaintiffs engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff, by an EEO representative, or otherwise engaged in the complaint process.

157.    The adverse retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

158.    Plaintiffs prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

159.     Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

160.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

161.     Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

162.     Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his participation and opposition to Defendant's discriminatory conduct.

163.     The foregoing actions by Defendant constitute retaliation against Plaintiff for opposing unlawful and discriminatory employment practices and/or for making a charge of unlawful and discriminatory employment practices, in violation of the ADA.

164.     As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to: humiliation, pain and suffering, emotional distress, medical costs and treatment, non-selection of employment, lost earnings, lost benefits, and other financial loss.

165.     By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of the ADA, including back pay, front pay, and compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress, prejudgment interest, attorneys' fees, expenses, costs, and costs of the action.

## COUNT 6
### (REHABILIATION ACT - RETALIATION)

166.     Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 to 165 above, as if fully set forth herein.

167.     Soon after complaining, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of the Rehabilitation Act.

168.     Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her participation and opposition to the unlawful and discriminatory employment practices of Defendant in violation of the Rehabilitation Act.

169.     Defendant, including Plaintiff's supervisors, knew of Plaintiffs engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff, by an EEO representative, or otherwise engaged in the complaint process.

170.     The adverse retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected activity.

171.     Plaintiffs prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

172.     Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

173.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

174.     Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

175.     Defendant's retaliatory conduct has been intentional, deliberate, willful,

malicious, reckless and in callous disregard of the rights of Plaintiff because of her participation and opposition to Defendant's discriminatory conduct.

176. The foregoing actions by Defendant constitute retaliation against Plaintiff for opposing unlawful and discriminatory employment practices and/or for making a charge of unlawful and discriminatory employment practices, in violation of the Rehabilitation Act.

177. As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to: humiliation, pain and suffering, emotional distress, medical costs and treatment, non-selection of employment, lost earnings, lost benefits, and other financial loss.

178. By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of the Rehabilitation Act, including back pay, front pay, and compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for the economic loss, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress, prejudgment interest, attorneys' fees, expenses, costs, and costs of the action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Terri Norris, respectfully prays that this Court grant her the following relief:

a.) Enter a declaratory judgment finding that the foregoing actions of Defendant violated the ADA and the Rehabilitation Act;.

b.) Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

23

c.) Award back pay and compensatory damages in amounts to be determined by the jury
that would fully compensate Plaintiff for the economic loss, physical and
psychological injury, humiliation, embarrassment, and mental and emotional distress
caused by the conduct of Defendant alleged herein;

d.) Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

e.) Order such other relief as this Court deems just and equitable.

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages in excess of Three Hundred
   Thousand Dollars ($300,000.00);

b. Damages and equitable relief for all harm Plaintiff has sustained
   as a result of Defendant's unlawful conduct including for loss of
   promotional potential, reputation, lost wages, lost job benefits she
   would have received but for Defendant's unlawful conduct;

c. Award reasonable attorney fees, costs, and expenses incurred for this
   action;

d. Order Defendant to institute a policy and procedure to be
   implemented against disability discrimination;

e. Equal Employment Opportunity training for Defendant and the
   supervisory officials at issue herein;

g. Supervisory training for the supervisors at issue herein;

h. Award equitable, declaratory, and injunctive relief; and

i. Award such other and further relief as this Honorable Court
   deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues in this case so triable.

24

Dated: June 27, 2018

Respectfully submitted,

**ALAN LESCHT AND ASSOCIATES, P.C.**

By:      _____/s/_____

Alan Lescht
(D.C. Bar No. 441691)
ALAN LESCHT AND ASSOCIATES, P.C.
1825 K Street, N.W., Suite 750
Washington, D.C. 20006
Phone: (202) 463-7955
Fax: (202) 463-6067
Alan.Lescht@leschtlaw.com

*Counsel for Plaintiff*